UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Park Hospitality LLC, | Case No. 18-cv-2171 (NEB/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Sangha Hospitality, LLC and Rupinder S. Sangha, | |
| Defendants. | |

This case is before the Court on this Court's April 1, 2020 Order (Dkt. 90) regarding Park Hospitality LLC's Motion for an Order to Show Cause why Defendants Should Not be Held in Contempt and Sanctioned for Violating the Court's Discovery Order and Failure to Retain Counsel, Motion for Default Judgment, and Award of Attorneys' Fees and Costs (Dkt. 78).

The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.   FACTUAL BACKGROUND

### A.   Complaint

The operative Complaint in this matter alleges as follows: Plaintiff Park Hospitality LLC ("Park") is the franchisor of the Park Inn® by Radisson System hotels ("System Hotels"). (Dkt. 1 ¶ 9.) System Hotels are characterized by Park's unique system (the "Business System"), which includes distinctive exterior and interior design, décor, and color scheme; uniform standards, specifications, and procedures for

construction, renovation and operations; confidential and proprietary system information; quality and uniformity of products and services offered; procedures for inventory and management control; training and assistance; and advertising and promotional programs. (Dkt. 1 ¶ 10.)  The Park System Hotels operate under the Park Inn® trademark, the name Park Inn® by Radisson, and other trademarks, service marks, and trade dress (referred to collectively as the "Park® Marks" or "Marks") pursuant to license agreements with Park. (Dkt. 1 ¶ 12.)  Park franchisees enjoy a license that allows them to use the Park® Marks and Business System in connection with the operation of System Hotels. (Dkt. 1 ¶ 13.) Park has been offering licenses to franchisees to operate Park's System Hotels since August 2000.  (Dkt. 1 ¶ 13.)

Park and Defendant Sangha Hospitality, LLC ("SHL") entered into a License Agreement with an effective date of May 5, 2014 ("License Agreement") granting SHL a non-exclusive license to renovate and operate a Park Inn® System Hotel to be located at 108 First Street, Macon, Georgia 31201 (the "Hotel") for a period of 15 years in accordance with the terms of the License Agreement.  (Dkt. 1 ¶ 15; Dkt. 1-2, Ex. A.)

Pursuant to Article 1.1 of the License Agreement, SHL agreed that the Hotel would have no less than 304 guestrooms.  (Dkt. 1 ¶ 17; Dkt. 1-2, Ex. A.)  SHL further agreed to complete all of the necessary renovations to the Hotel so that the Opening Date (as that term is defined in the License Agreement) of the Hotel would occur on or before October 1, 2014.  (Dkt. 1 ¶ 17; Dkt. 1-2, Ex. A.)

Pursuant to Article 5 of the License Agreement, SHL agreed to pay certain Royalty Fees, Marketing Fees, Reservation Fees, and other fees as set forth in the License

Agreement, for the entire term of the Agreement.  (Dkt. 1 ¶ 18; Dkt. 1-2, Ex. A.)

Under Article 17.2(e) of the License Agreement, SHL agreed that the failure to open the Hotel by the date set forth in the License Agreement constituted an "event of material default" entitling Park to terminate the License Agreement upon notice to SHL subject to a right to cure.  (Dkt. 1 ¶ 19; Dkt. 1-2, Ex. A.)  The cure period for such a default under Article 17 was thirty days after SHL's receipt of the notice.  (Dkt. 1 ¶ 19; Dkt. 1-2, Ex. A.)

Pursuant to Article 17.4 of the License Agreement, SHL acknowledged that if the License Agreement was terminated because of SHL's default, the actual damages that Park would suffer for the loss of prospective fees and other amounts payable to Park under Article 5 would be difficult if not impossible to ascertain.  (Dkt. 1 ¶ 19; Dkt. 1-2, Ex. A.)  Article 17.4 further states that if the License Agreement was terminated because of SHL's default, Park would be entitled to liquidated damages, calculated as follows:

> 17.4 <u>Liquidated Damages</u>. If this Agreement is terminated because of Licensee's default, the actual damages that Park would suffer for the loss of prospective fees and other amounts payable to Park under Article 5 would be difficult if not impossible to ascertain. Therefore, if this Agreement is terminated because of Licensee's default, Licensee within 10 days of such termination will pay to Park as liquidated damages, and not as a penalty, a reasonable estimate of the probable damages that Park would suffer for the loss of prospective fees and other amounts payable under Article 5, calculated as follows: (i) two times the Royalty Fees payable to Park under Sections 5.2 for the 12 months of the Hotel's Operation as a System Hotel Immediately preceding the date of termination of this Agreement; or (ii) if the Hotel opens as a System Hotel but has not been Operating as a System Hotel for 12 months before the date of such termination, 24 multiplied by the average monthly Royalty Fees payable to Park under Sections 5.2 through the date of termination; or (iii) if the Hotel fails to open as a System Hotel, $1,000 multiplied by the number of guestrooms required in Section 1.1. licensee will also pay taxes on such payment in accordance with Section 5.9.

3

(Dkt. 1-2, Ex. A (emphasis in original).)

Article 19.1 of the License Agreement establishes SHL's obligations upon termination. (Dkt. 1 ¶ 21.) Pursuant to Article 19.1(a), SHL agreed, among other things, to pay all amounts due and owing to Park upon the termination of the License Agreement. (Dkt. 1 ¶ 21; Dkt. 1-2, Ex. A.)

Pursuant to Article 25.13 of the License Agreement, Park and SHL agreed that "[a]ll reasonable and necessary costs and expenses, including attorneys' fees, incurred by Park or Licensee in enforcing any provisions of this Agreement, or in defending against any Claims made against one by the other with respect to this Agreement, whether through injunctive relief or otherwise, will be paid to the prevailing party in such action by the other." (Dkt. 1-2, Ex. A.)

Defendant Rupinder S. Sangha, the sole member of SHL, entered into a Personal Guaranty in which he personally guaranteed to Park that he would make full and prompt payment to Park of all fees, charges, payments, and amounts due or payable to Park and its affiliates that arose out of or related to the License Agreement. (Dkt. 1 ¶¶ 4, 16; Dkt. 1-2, Ex. B.) Sangha also agreed that upon termination or expiration of the License Agreement, he would timely perform all of SHL's post-termination obligations when due. (Dkt. 1 ¶ 16; Dkt. 1-2, Ex. B.)

Defendants failed to renovate and open the Hotel as a Park Inn® System Hotel by October 1, 2014, as required by the License Agreement. (Dkt. 1 ¶ 23.) Park continued to try and work with Defendants in an effort to assist them with completing the renovations

4

and the opening the Hotel, however, Defendants failed to diligently pursue the renovations and the opening of the Hotel.  (Dkt. 1 ¶ 24.)  On September 8, 2017, Park issued a Notice of Default and Notice of Termination to SHL ("Termination Notice") for failure to complete the required renovations before the Opening Date, and for failure to open the Hotel by October 1, 2014.  (Dkt. 1 ¶ 25; Dkt. 1-2, Ex. C.)  The Termination Notice gave SHL until October 11, 2017 to cure the default by completing the required renovations and opening the Hotel.  (Dkt. 1 ¶ 25; Dkt. 1-2, Ex. C.)   The Termination Notice advised SHL that, pursuant to Article 17.2 of the License Agreement, if Defendants failed to cure the default, the termination would be terminated effective on October 16, 2017.  (Dkt. 1 ¶ 26; Dkt. 1-2, Ex. C.)

Defendants did not cure their default by October 11, 2017 and, in fact, the Hotel never opened as a Park Inn® System Hotel, and as a result, the License Agreement was terminated effective October 16, 2017.  (Dkt. 1 ¶ 27.)  As such, Defendants were required under Article 17.4 of the License Agreement to pay liquidated damages within 10 days of termination of the License Agreement for SHL's default and were notified by letter of their obligation to pay $304,000 in liquidated damages.  (Dkt. 1 ¶¶ 28-29.)  Defendants have made no payment.  (Dkt. 1 ¶ 30.)

Park asserts two counts.  The first count is a breach of the License Agreement and Personal Guaranty related to Defendants' failure to pay liquated damages under Article 17.4 of License Agreement.  (Dkt. 1 ¶ 30.)  The second count is a breach of the License Agreement and Personal Guaranty related to Defendants' failure to pay the attorneys' fees and costs related to enforcing the License Agreement under Article 25.13 of the

License Agreement and the Personal Guaranty. (Dkt. 1 ¶¶ 40-42.)

**B.    Procedural History**

Defendants were initially represented by counsel in this matter, who filed an Answer and Counterclaim (Dkt. 13) and subsequently an Amended Answer and Counterclaim (Dkt. 25). The Counterclaim was asserted by SHL against Park for breach of contract and the implied covenant of good faith and fair dealing. (*See* Dkt. 25.)

On April 17, 2019, the Court granted Defendants' counsel's motion to withdraw. (Dkt. 48.) As part of that Order, the Court warned SHL as follows:

> Defendant Sangha Hospitality, LLC shall have until May 17, 2019 to retain new counsel. The Court notes that a business entity my not proceed pro se or by a representative or agent of the entity. *See Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 8 52, 857 (8th Cir. 1996). Thus, Sangha Hospitality, LLC must retain counsel or it will be in default.

(Dkt. 48 at 2.) On June 11, 2019, the Court stayed this matter for thirty days so as to allow Defendants to retain new Counsel. (Dkt. 51.) On July 18, 2019, the Court continued the stay for 15 days so as to allow Defendants to retain counsel. (Dkt. 53.) As part of that Order, the Court reminded SHL that it would be in default if it did not retain legal counsel. (*Id.* at 2 n.2.)

On October 21, 2019, the Court granted Park's Motion to Compel (Dkt. 63) and ordered that Defendants to respond to discovery as follows:

> 1. Defendants must provide written answers to Plaintiff's First Set of Interrogatories to Defendants and produce all remaining documents responsive to Plaintiff's First Request for Production of Documents to Defendants by November 20, 2019. Electronic documents must be produced in the format set forth on pages 2-3 of the Pretrial Scheduling Order (Dkt. 31), and to the extent electronic documents have already been produced but

6

>  not in that format, they must be reproduced in that format by November 20, 2019.
>
>  2. Defendants, who did not serve any responses to Plaintiff's First Set of Interrogatories, have waived their objections to Plaintiff's First Set of Interrogatories.

(Dkt. 71 at 1.)  The discovery at issue was originally due on February 15, 2019, under the Federal Rules of Civil Procedure.  (Dkt. 66 ¶ 5.)

Given that discovery was not forthcoming, on March 2, 2020, Park filed a Motion for an Order to Show Cause why Defendants Should Not be Held in Contempt and Sanctioned for Violating the Court's Discovery Order and Failure to Retain Counsel, Motion for Default Judgment, and Award of Attorneys' Fees and Costs (Dkt. 78).  Park filed an affidavit of service as to the Motion.  (Dkt. 85.)  Defendants did not oppose the motion, nor did they make an appearance at the March 31, 2020 hearing on the Motion.  (Dkt. 89.)  The Motion sought an order entering default judgment against Defendants, jointly and severally, in favor of Park on its affirmative claims in the amount of $304,000, striking and/or dismissing Defendants' First Amended Answer and Counterclaim with prejudice, and awarding Park its attorneys' fees and costs incurred in this action.  (Dkt. 78.)

>  The Court entered the following April 1, 2020 Order on the Motion:
>
>  [B]ased on the evidence in the record presently before the Court, Defendants have yet to comply with this Court's October 21, 2019 Order compelling discovery (Dkt. 71). For the reasons stated on the record, and based on the files, records, and proceedings herein, the Motion is **GRANTED** to the extent set forth below and **IT IS ORDERED THAT**:
>
>  1.  Defendants shall serve on Plaintiff's counsel and file with the Court a response to Plaintiff's Motion for an Order to Show Cause why

7

    Defendants Should Not be Held in Contempt and Sanctioned for Violating the Court's Discovery Order and Failure to Retain Counsel, Motion for Default Judgment, and Award of Attorneys' Fees and Costs (Dkt. 78) within **three (3) weeks of the date of this Order**.

2. Consistent with this Court's October 21, 2019 Order (Dkt. 71), Defendants must provide written answers to Plaintiff's First Set of Interrogatories to Defendants and produce all remaining documents responsive to Plaintiff's First Request for Production of Documents to Defendants **within three (3) weeks from the date of this Order**. Electronic documents must be produced in the format set forth on pages 2-3 of the Pretrial Scheduling Order (Dkt. 31), and to the extent electronic documents have already been produced but not in that format, they must be reproduced in that format by **within three (3) weeks from the date of this Order**.

3. **<u>To the extent that Defendants fail to comply with this Order, the Court may issue a Report and Recommendation for entry of default and default judgment in favor of Plaintiff, dismissal of Defendants' Counterclaim, and an award of reasonable attorney's fees to Plaintiff incurred in the present action. The Court warns Defendants that ignoring this Court's Orders will be seen a willful act on their part and the Court will act accordingly to sanction them if they continue to violate its Orders.</u>**

4. By April 10, 2020, Plaintiff shall file with the Court and serve on Defendants a declaration identifying the amount of reasonable fees and costs it incurred in bringing the present Motion (Dkt. 78). Defendants shall file any response to Plaintiff's declaration on or before April 24, 2020, following which the Court will enter an order regarding the reasonable fees and costs awarded.

5. If Defendant fails to comply with any part of the Court's Order, Plaintiff's counsel shall notify the Court of this through a declaration filed with the Court and served on Defendants. The declaration shall also include evidence of how Plaintiff's claimed liquidated damages in the amount of $304,000 was calculated, as instructed by the Court during the March 31, 2020 hearing on this Motion.

6. Plaintiff's counsel shall email a copy of this Order to Defendants to the extent that it is reasonably feasible and confirm that he has done so as part of the declaration set forth in paragraph 5 of this Order, attaching a copy of any such communication to the declaration.

(Dkt. 90 (emphasis in original).)

On April 28, 2020, Park's counsel notified the Court that Defendants had failed to comply with the Court's April 1, 2020 Order, including failing to respond to its discovery request and failing to respond to the Motion as ordered by the Court. (Dkt. 93.) The Court has received no further communications or filings from Defendants since its April 1, 2020 Order nor any indication that SHL has retained counsel as required by this Court's previous Orders. Moreover, there is no indication to suggest that Defendants have not received this Court's Orders or any of the other materials filed in this action.

## II.   ANALYSIS

### A.   Whether Sanctions are Appropriate

Under Rule 37(b) of the Federal Rules of Civil Procedure, a Court may sanction a party for failing to comply with a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A). These sanctions may include the striking of pleadings, dismissing an action or proceeding in whole or in part, and/or "rendering default judgment against the disobedient party . . . ." *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). In addition, Rule 16 provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b) (2)(A)(ii)-(vii), if a party or its attorney . . . (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1).

"To impose an 'extreme sanction,' such as entering default against a defendant or dismissing a party's claim, the 'strong policy in favor of deciding a case on its merits' demands a showing of egregiousness that justifies depriving the litigant of its chance to

be heard." *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, No. 0:17-CV-5009-JRT-KMM, 2020 WL 1910589, at *11 (D. Minn. Apr. 20, 2020) (quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020-21 (8th Cir. 1999)). "To justify [severe sanctions], Rule 37 requires: '(1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party.'" *Sentis Gr., Inc. v. Shell Oil Co.*, 559 F.3d 888, 899 (8th Cir. 2009) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)).

Here, Defendants have repeatedly ignored this Court's Orders and have refused to participate in this case for over a year. First, with respect to SHL's failure to retain new legal counsel, the Court ordered SHL to retain new counsel on April 17, 2019, the Court gave SHL until May 17, 2019 to retain new counsel or face default. (Dkt. 48 at 2.) The Court gave SHL additional time to find new counsel on two separate occasions (Dkts. 51 and 53), through the beginning of August 2019, and again warned SHL that failure to find counsel could lead to default. Over a year later from its initial Order, SHL has still failed to obtain new counsel and has not provided any update regarding its search, despite the threat of default and dismissal looming. By ignoring this Court's Orders over such a long period of time it is evident that SHL is no longer interested in defending this case or prosecuting its Counterclaim.[1]

As it relates to the Court's discovery Orders, it is important to emphasize that the discovery at issue had been originally due under the Federal Rules of Civil Procedure on February 15, 2019. (Dkt. 66 ¶ 5.) The Court initially ordered the documents produced in

---

[1] Sangha, who was personally named as a defendant, could have represented himself, but chose not to do so.

10

its October 21, 2019 Order. Defendants failed to comply with the Order. When Park sought sanctions, including default judgment and the dismissal of the counterclaim, for the failure to comply with the Court's Order,[2] the Court gave Defendants an additional opportunity through April 21, 2020 to comply with its discovery obligations under the threat of sanctions should it chose to again ignore the Court's rulings. Yet, almost 16 months after the discovery responses were due and despite numerous Orders attempting to compel production, Defendants have inexplicably remained silent.

Defendants have yet to comply with their discovery obligations under the Federal Rules of Civil Procedure, failed to appear at hearings, failed to obtain new legal counsel following the withdrawal of counsel despite repeated Orders from the Court requiring SHL to do so, and reportedly failed to comply with this Court's Orders on discovery. As such, the Court finds that Defendants have willfully violated the Federal Rules of Civil Procedure and willfully disregarded this Court's Orders.

Under these circumstances, it appears that Defendants' tactic is to pretend as though this case does not exist to the detriment of the legal rights of Park, and such conduct warrants the striking of their Answer, the dismissal of their Counterclaims, and the entry of default. *See Ackra Direct Mktg.*, 86 F.3d at 856 (finding that a defendant's "failure to respond to the magistrate judge's discovery order and other orders, failure to comply with pretrial requirements, and failure to attend the final pretrial/settlement conference . . . [are] certainly grounds for default judgement.") (citations omitted); *see*

---

[2] Notably, Defendants did not respond to the Motion and did not appear at the hearing on the Motion.

*also Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993); (concluding that a defendant's "total failure to comply with numerous court orders and with . . . discovery requests" justified an entry of default judgement under Rule 37); *U.S. Bank Nat'l Ass'n v. San Antonio Cash Network*, No. 17-CV-275 (PAM/TNL), 2018 WL 1427105, at *4 (D. Minn. Mar. 1, 2018), *R.&R. adopted by*, 2018 WL 1733350 (D. Minn. Apr. 10, 2018) ("SACN has failed to fulfill its discovery obligations, failed to appear at hearings, failed to obtain new representation following the withdrawal of counsel, and failed to attend the required settlement conference.  SACN has willfully violated the Federal Rules of Civil Procedure and willfully disregarded this Court's orders.  Furthermore, SACN's lack of participation demonstrates that SACN does not intend to defend itself against U.S. Bank's allegations.  Under the circumstances, SACN's conduct warrants entry of default judgment.").

**B.     Default Judgment**

When a defendant is in default, the district court accepts as true all of the factual allegations in the complaint except those relating to the amount of damages, and district court then must determine whether the unchallenged facts constitute a legitimate cause of action.  *See Merchants Bank Equip. Fin. v. Snowtracks Commercial Winter Mgmt., LLC*, No. 16-CV-2694 (WMW/DTS), 2020 WL 1910587, at *2 (D. Minn. Apr. 20, 2020) (citing *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)).

Here, the franchise agreement and personal guaranty are contracts.[3] *See City of Macon v. Alltel Commc'ns, Inc.*, 277 Ga. 823, 830, 596 S.E.2d 589, 595 (2004); Ga. Code § 10-7-1; *see also Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, 88 F. Supp. 3d 1034, 1045 (D. Minn. 2015). "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13–3–1; *see also East Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 970 (D. Minn. 2018) (quoting *Taxi Connection v. Dakota, Minn. & E. R.R. Corp.*, 513 F.3d 823 826 (8th Cir. 2008)) (applying Minnesota law) ("The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration.'"). An action for breach of contract requires breach of a valid contract and resultant damages to the party who has the right to complain about the breach. *See Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996) (citation omitted); *see also Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quoting *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011)) (citation omitted) ("To ultimately prevail on a breach-of-contract claim

---

[3]   Both agreements are governed by the law where the franchise at issue was to be located, which in this case is Georgia. (Dkt. 1-2, Exs. A-B.) While the Minnesota Franchise Act, Minn. Stat. § 80C.21, has explicitly prevented circumventing its protections through choice-of-law provisions, courts have concluded that this only applies to choice of law provisions where the franchisee is a Minnesota resident or the franchise is being operated in Minnesota. *See Hockey Enterprises, Inc. v. Total Hockey Worldwide, LLC*, 762 F. Supp. 2d 1138, 1146 (D. Minn. 2011) (citing *Days Inn Worldwide, Inc. v. SBSB, LLC*, 2010 WL 3546958, at *3 (D. Minn. Sept. 7, 2010)). In this case, the franchise was located in Georgia and SHL is a Georgia LLC with its principal place of business located in Georgia. (Dkt. 1 ¶¶ 3, 15.)

under Minnesota law, a plaintiff must demonstrate the '(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant.'").

Here, the allegations in the Complaint, as well as the agreements encompassed by the Complaint, demonstrates that Park has established a legitimate cause of action for breach of contract as it relates to the License Agreement and the Personal Guaranty. The agreements are signed by both parties and are supported by sufficient consideration, involving access to the Marks and Business System in exchange for initial payment and promises of royalty payments and other payments, as well as a promise by Sangha to guarantee any monetary obligations of SHL in order to induce Park to enter into the License Agreement with SHL. Moreover, the failure to timely open the 304 rooms constitutes a breach of the License Agreement thereby triggering payment obligations under both agreements that both Defendants have failed to pay.

The issue then becomes the amount of monetary relief that Park is due.

## C.     Damages on Default

While the facts alleged in the Complaint are taken as true with respect to liability for the purposes of default, this does not automatically result in Park recovering what was demanded in the Complaint. *U.S. Bank Nat'l Ass'n*, 2018 WL 1427105, at *4 (citation omitted). "A party entitled to a default judgment must prove its damages by a preponderance of the evidence." *Merchants Bank Equip. Fin.*, 2020 WL 1910587, at *2 (citing *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001)). "A district court determines damages 'by taking evidence when necessary or by computation

from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.'" *Id.* (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)); *see also Hughes v. Goynes*, No. CIV. 13-1319 DWF/JJK, 2015 WL 4077469, at *5 (D. Minn. July 2, 2015) ("Damages on default judgement must be proved.").

The only categories of damages claimed by Park as a part of default judgment are liquidated damages and attorneys' fees.

### 1. <u>Liquidated Damages</u>

Pursuant to Georgia law,[4] liquidated damages with respect to franchise agreements are allowed under certain circumstances pertaining to hotel franchises, where: (1) the damages arising from premature termination would be difficult to ascertain; (2) the license agreement stated the liquidated damages were not intended as a penalty; and (3) the formula to calculate the liquidated damages was reasonable. *See, e.g., Holiday Hosp. Franchising, LLC v. Morning Star Hotel Victorville 4, LLC*, No. 1:12-CV-3809-ODE, 2014 WL 11393569, at *9 (N.D. Ga. May 2, 2014); *see also Ramada Franchise Sys., Inc. v. Motor Inn Inv. Corp.*, 755 F. Supp. 1570, 1577-78 (S.D. Ga. 1991) (finding as valid and enforcing a liquidated damages provision in hotel license agreement).

Under Article 17.4 of the License Agreement, the parties, including SHL, acknowledged that the damages suffered by Park for loss of prospective fees and other amounts payable would be difficult to ascertain. (Dkt. 1-2, Ex. A.) SHL stipulated that a reasonable estimate of Park's damages if the Hotel failed to open as a Park® System

---

[4] The Court notes that the Minnesota Franchise Act does not allow for liquidated damages. *See* Minn. R. 2860.4400.

15

Hotel would be calculated as $1,000 multiplied by 304—the number of guestrooms required under Article 1.1 of the License Agreement. (Dkt. 1-2, Ex. A, Arts. 17.4 and 1.1.) Given that it would be difficult to determine the future royalties based on rental revenues, the Court finds that it would be difficult to ascertain actual profits in this case and that the formula for damages in the License Agreement does not constitute a penalty. At least one other Georgia court examining liquidated damages in the hotel franchise context has determined that they are not penalties, and that similar formulas in calculating damages are reasonable given that the actual prospective damages are difficult to ascertain from a franchisee's default. *See*, *e.g.*, *Holiday Hosp. Franchising*, 2014 WL 11393569, at *9 (dealing with a liquidated damages of $162,500 for 130 rooms and finding, "[f]inally, the formula used to calculate the liquidated damages—which multiplies the number of rooms in the proposed Hotel (130) by 500 to calculate the application fee, and then multiplies that fee ($65,000) by a factor of 2.5—is a reasonable pre-estimate of the probable loss to HHFL during the 20 months (i.e., almost two years) between the date on the License Agreement and the termination.").

As such, the Court concludes that Park has established its damages in the amount $304,000.00 for liquidated damages by the preponderance of the evidence, and that this amount should be awarded to Park payable by Defendants jointly and severally based on the License Agreement and the Personal Guaranty.

### 2. **Attorneys' Fees**

The License Agreement also authorizes the payment of attorneys' fees under Article 25.13:

16

> 25.13 <u>Attorneys' Fees</u>. All reasonable and necessary costs and expenses, including attorneys' fees, incurred by Park or Licensee in enforcing any provisions of this Agreement, or in defending against any Claims made against one by the other with respect to this Agreement, whether through injunctive relief or otherwise, will be paid to the prevailing party in such action by the other party.

(Dkt. 1-2, Ex. A, Art. 25.13 (emphasis in original).) The Personal Guaranty also incorporates this attorneys' fees provision. (Dkt. 1-2, Ex. B.)

Under either Minnesota or Georgia law, contract provisions authorizing recovery of attorneys' fees by a prevailing party are enforceable. *See Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 554 (Minn. 2008) (citation omitted); *Branch Banking & Tr. Co. v. Women's Health Inst. of Macon, PC*, No. 5:19-CV-176 (MTT), 2020 WL 1472435, at *3 (M.D. Ga. Mar. 26, 2020). Outside of the sanctions already ordered by the Court relating to the attorneys' fees incurred for bringing its Motion, Park has not provided any evidence supporting the amount of attorneys' fees incurred in the present action. Consequently, Park must still prove damages in the form of attorneys' fees to a reasonable degree of certainty before judgment may be entered. *See Everyday Learning*, 242 F.3d at 819 (citation omitted). Therefore, the Court further recommends that, should this Report and Recommendation be adopted, Park be directed to provide evidence (within two weeks of its adoption) in support of the amount of the reasonable attorneys' fees and costs sought. The amount sought should exclude any fees for work performed related to attorneys' fees already awarded by the Court.

### III. RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1. Defendants' Amended Answer (Dkt. 25) be **STRICKEN**.

2. Defendant Sangha Hospitality, LLC's Counterclaims (Dkt. 25) against Park Hospitality LLC be **DISMISSED WITH PREJUDICE**.

3. Park Hospitality LLC's request for Entry of Default Judgment against Defendants be **GRANTED**.

4. That Park Hospitality LLC be awarded $304,000.00 in liquidated damages, and that the Court enter judgement against Defendants, jointly and severally, for this amount payable to Park Hospitality LLC.

5. Park Hospitality LLC be directed to file a petition with this Court setting forth evidence as to the reasonable attorneys' fees and costs incurred in bringing this action and defending against Defendant Sangha Hospitality, LLC's Counterclaim consistent with the Report and Recommendation.

DATED: June 24, 2020            *s/Elizabeth Cowan Wright*
                                ELIZABETH COWAN WRIGHT
                                United States Magistrate Judge

## **NOTICE**

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).